**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

GREENBRIER HOTEL CORPORATION, et al.,

        Plaintiffs,

v.                                                  CIVIL ACTION NO.    5:19-cv-00772

GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL,

        Defendant.

## DEFENDANT'S RESPONSE TO PLAINTIFFS' RULE 57 MOTION FOR A SPEEDY HEARING AND MOTION TO STAY

COMES NOW Defendant, Goodman-Gable-Gould/Adjusters International ("GGG"), by counsel, and in response to Plaintiffs' Rule 57 Motion for a Speedy Hearing, requests that this Court stay this matter and postpone ruling on Plaintiffs' Motion pending a ruling by the United States District Court for the Eastern District of Virginia on GGG's pending motion for reconsideration of the transfer of this case to this Court. Because the parties agreed, pursuant to the forum selection clause in their Escrow Agreement, to litigate their disputes relating to the funds held in escrow in the District of Columbia, that is the proper forum for this action. The Escrow Agreement was entered into between the parties as a means of addressing the pre-existing contractual disputes between the parties, and the forum selection clause should therefore apply to this action in its entirety. Until the motion to reconsider is decided, any action in this Court would be premature and contrary to the interests of justice.

### BACKGROUND

This matter involves a contractual dispute over services performed after the major flooding event of June 23, 2016, which affected Greenbrier County, West Virginia. The flood caused significant damages to Plaintiffs' property and businesses. The plaintiffs (sometimes hereinafter collectively referred to as "Greenbrier") held property insurance policies for the damaged properties which were obtained through the Resort Hospitality Association ("RHA")

1

and Resort Hotel Insurance Services. On July 7, 2016, Plaintiffs hired GGG to assist in the measurement of the loss resulting from the flood damage, and the formulation and adjustment of Plaintiffs' claims with the insurance companies. The terms of the engagement were set forth in a Services Agreement signed by both parties. Exhibit A. Pursuant to the terms of the Services Agreement, GGG was to be compensated on a contingency fee basis according to a fee schedule based upon the amount recovered by the plaintiffs as a result of their claims. The Services Agreement contained no choice of forum for disputes arising therefrom.

By March 9, 2018, GGG had provided substantial services under the Services Agreement, involving multiple site inspections, meetings, and engagement of vendors to measure the loss. After submission of the loss measurements, and after approximately $39 million had been paid to the plaintiffs on the insurance claim as a result of the services provided by GGG, the Defendant GGG received notice on March 9, 2018, that Plaintiffs had revoked its authority to perform services pursuant to the Service Agreement. Prior to this, GGG was never informed of why Greenbrier sought to terminate GGG's services under the Service Agreement. Greenbrier's actions were taken prior to the completion of the claim adjustment. In fact, the plaintiffs at no time communicated to GGG that they were terminating the Services Agreement for cause.

The insurance companies had accepted the claim and adjusted the claim with GGG. As a result of that adjustment monies were paid under the insurance policies. Those monies were paid to RHA[1] with such funds being held by RHA as a stakeholder. Both GGG and Greenbrier made claims to those funds. Given the competing claims, RHA refused to pay either party. GGG claimed it was owed the funds per its performance under the Services Agreement, while Greenbrier contended that GGG had breached the Services Agreement and was not entitled to any of the funds.

---

[1] RHA was the first named insured on one of the policies. While monies were paid to RHA, the company had no loss and the monies had been paid by the insurance companies to RHA as a stakeholder for further distribution.

In order to fashion a means of dispute resolution as to the funds being held, and any funds the insurers paid on the Greenbrier claim in the future, both Greenbrier and GGG entered into two Agreements as a mechanism to resolve the competing claims. Pursuant to the March 27, 2018 Escrow Agreement, RHA was to place $607,015.26 of the funds it held, the amount to which GGG claimed entitlement, into escrow. Exhibit B. It was anticipated that the escrow would operate to resolve the dispute as to the funds, which in turn would require resolution of the issue of whether there had been a breach of the Services Agreement by GGG. The parties agreed that the disputed funds would be placed "into an interest-bearing escrow account at a bank or other financial Institution based In Washington, DC, under both their names."

Shortly after entering into the March 27, 2018 Agreement the parties selected a bank to act as escrow agent, and a second Agreement was entered into. The April 23, 2018 Escrow Agreement clarified and amplified the prior Agreement as to how the dispute as to the escrowed funds would be held, and how the competing claims to the disputed funds would be resolved. *See* Exhibit C. The April 23, 2018 Agreement confirmed that the parties had selected Eagle Bank as the escrow agent and directed that the monies would be held in an escrow bearing account in Washington DC. The April 23, 2018 Escrow Agreement provided that:

> WHEREAS, GREENBRIER and GGG have entered into a certain Agreement with an effective date of March 27, 2018 pursuant to which the Nonbank Parties agree to place insurance proceeds in escrow, and whereas GREENBRIER and GGG entered into a certain retainer Agreement with which there are disagreements, including but not limited to whether such retainer Agreement has been breached, if it has been canceled, and whether THE GOODMAN GABLE GOULD COMPANY is entitled to recover thereon.

Exhibit C. In this context, the "retainer Agreement" in the quote above, is a reference to the Services Agreement attached as Exhibit A.

Further, the parties contemplated that all disputes related to the disputed funds and related to GGG's performance under the Services Agreement would be resolved pursuant to the April 23, 2018 Escrow Agreement as is evident by the merger clause which provided that:

3

> 11. ENTIRE AGREEMENT: This Agreement contains the entire understanding by and among the parties hereto; there are no promises, agreements, understandings, representations or warranties, other than as herein set forth, including specifically the "March 27, 2018" Agreement and the contested retainer Agreement; Eagle Bank is not a party to the latter two agreements. No change or modification of this Agreement shall be valid or effective unless the same is in writing and is signed by an of the parties hereto.

The parties further agreed that all rights to the disputed funds held in escrow[2] would be resolved in the courts in the District of Columbia, applying DC law. The April 23, 2018 Escrow Agreement contains a mandatory forum selection clause which provides that:

> 12. APPLICABLE LAW. SUBMISSION TO JURISDICTION; SUCCESSORS AND ASSIGNS: This Agreement shall be governed in all respects by the internal substantive Laws of the District of Columbia (and not its choice of law rules), and shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, executors, administrators, personal representatives, successors and assigns. **Each of the Nonbank Parties hereby submits to the personal jurisdiction of the courts of the District of Columbia, whether federal or local, and agrees that <u>all proceedings relating hereto</u> shall be brought in courts located within the District of Columbia.** (emphasis added)

Exhibit C. Significantly, Greenbrier admits that the forum selection clause is both undisputed and enforceable. *See* Doc. 15 at 2 ("Plaintiffs concede that the Escrow Agreement contains a valid forum selection clause in favor of state or federal courts in the District of Columbia.").

Despite the agreement between the parties to bring their disputes in the District of Columbia, Plaintiffs filed suit against GGG on August 23, 2019, in the Eastern District of Virginia. This defendant filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 USC § 1406 or, in the Alternative, to Transfer Venue pursuant to 28 USC § 1404 to the District of D.C. In their opposition to that Motion, Plaintiffs conceded that the forum selection clause in the Escrow Agreement is both mandatory and enforceable. Doc. 15 at 2.

Concurrently, GGG filed a complaint with the United States District Court for the District of Columbia against Plaintiffs for Plaintiffs' breach of the Escrow Agreement and declaratory relief as to the validity and enforceability of the Escrow Agreement.

---

[2] This was to include a percentage of any additional insurance payments made in the future, which the parties agreed would be placed in the same escrow account.

The Eastern District of Virginia, in ruling on GGG's motion to dismiss or transfer venue, declined to dismiss the case, ignored the parties' forum selection, and instead transferred venue to the Southern District of West Virginia. In its memorandum opinion, the court explained the reasoning behind its determination that the Eastern District of Virginia was an improper venue for this action. The court made no reference to the forum selection clause in the Escrow Agreement or GGG's request that it be enforced and venue be transferred to the District of Columbia. The court merely held that the funds in escrow did not provide a basis for venue in the Eastern District of Virginia, reasoning as follows:

> This dispute concerns the terms of the Services Agreement between the parties though—not the Escrow Agreement. The funds held in escrow are "a matter that appears to be but a small subpart of the broader [c]ontract dispute at issue in this action." *See Beatgasm, LLC v. Punchkick Interactive,Inc.*, No. 2-14-611, 2015 WL 4394260 at *3 (E.D. Va. June 25, 2015) (finding, on similar facts, that an escrow agreement's forum selection clause does not determine the propriety of venue). Because § 1391(b)(2) requires that the property justifying venue be "a *substantial* part of property that is the subject of the action," the funds held in escrow are insufficient to provide a basis for venue in the Eastern District of Virginia. *See* § 1391(b)(2).

Doc. 21 at 2-3.

After the court's ruling, GGG filed a Motion to Reconsider Transfer of Case with the Eastern District of Virginia. In that Motion, GGG asked the court to reconsider its decision to transfer this matter to the Southern District of West Virginia and to alter its ruling so that this matter may instead be heard in the District of Columbia pursuant to the forum selection clause. That motion is still pending.

Plaintiff has now filed the instant motion asking this Court for a speedy hearing pursuant to Rule 57 of the Federal Rules of Civil Procedure. However, this matter could be transferred out of this Court should GGG's Motion to Reconsider Transfer of Case be granted by the Eastern District of Virginia.

5

**ARGUMENT**

Because GGG has pending with the U.S. District Court for the Eastern District of Virginia a Motion to Reconsider the transfer of this case to the Southern District of West Virginia, this Court should decline to rule on Plaintiffs' instant Rule 57 Motion for a Speedy Hearing until the Motion to Reconsider has been resolved by the Eastern District of Virginia. The motion to reconsider demonstrates that, pursuant to the parties' Escrow Agreement and its forum selection clause, the proper venue for this action is the District of Columbia. The parties' choice of forum should be upheld, and this Court should stay any further action in this matter pending disposition of the Motion to Reconsider.

**I.     The proper forum for this action is the District of Columbia, which the parties mutually agreed to in the forum selection clause of the Escrow Agreement.**

The sole forum selection clause agreed upon by the parties in this matter should have been enforced and the matter transferred to the District of Columbia. The United States Supreme Court has explicitly held that, "[w]hen the parties have agreed to a *valid* forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 62 (2013). Plaintiffs conceded in their response to the Motion to Transfer that the forum selection clause was *valid* and binding. *See* Doc. 15 at 2 ("In fact the Plaintiffs concede that the Escrow Agreement contains a valid forum selection clause in favor of state or federal courts in the District of Columbia."). As reflected in the Escrow Agreement, the Escrow was established, by its very terms, because there was a dispute over whether, as Plaintiffs allege, GGG had breached the services Agreement, or whether, as GGG alleges, the Plaintiffs had breached their payment obligations under the services Agreement. The express terms of the Escrow Agreement anticipate and incorporate any and all disputes as to performance and fees arising from the original Services Agreement. Therefore, in entering the Escrow Agreement and agreeing to the forum selection clause therein, the parties clearly already knew of the specific

6

disputes relating to the funds being held in escrow and decided upon the District of Columbia as the forum in which those disputes should be heard.

In its order transferring the case to this Court, the court in the Eastern District of Virginia relied upon *Beatgasm, LLC v. Punchkick Interactive,Inc.*, 2015 WL 4394260 at *3, as the basis for determining that "an escrow agreement's forum selection clause does not determine the propriety of the venue." Doc. 21 at 3. However, the facts of this case are fundamentally different from those of *Beatgasm* such that the quoted statement cannot be said to apply when the nature of the agreements in this matter is taken into account. In *Beatgasm*, the suit was filed in the U.S. District Court for the Eastern District of Virginia. The contract at issue contained an exclusive forum selection clause selecting Ohio law and limiting the venue and jurisdiction of disputes to the State and Federal Courts in the Western Division of the Southern District of Ohio. The underlying contract dispute resulted in an escrow agreement with a separate forum selection clause that provided for exclusive jurisdiction in "Cook County Illinois." The defendant moved to transfer the case to either the Southern or Northern District of Ohio. Despite the plaintiff's arguments to the contrary, the court held that the matter should be transferred. In deciding upon which forum selection clause to enforce, the court noted that the dispute was more about the contract than the Escrow Agreement and, therefore, held that the forum selection clause for the Southern District of Ohio was the proper venue for the dispute. The Court did not ignore the parties' choice of forum, but instead had to choose between two (2) different forums that had been agreed upon.

Unlike in *Beatgasm,* here there is only a single forum selection clause and as such, the forum agreed upon is binding on the parties. *See Atlantic Marine*, 571 U.S. at 62 ("When the parties have agreed to a *valid* forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). Also unlike in *Beatgasm*, in this case the forum selection clause in the Escrow Agreement is broad enough to encompass disputes inclusive of underlying contract disputes as to the services agreement. Accordingly, any action relating in

7

whole or in part to the disputed monies or the Escrow Agreement triggers the mandatory forum selection clause and may only be brought in the District of Columbia. Thus, since the parties agreed to a single forum selection clause (after the disputes regarding alleged breach of the Services Agreement had already emerged), and that clause broadly encompasses all disputes relating to the funds in escrow, the U.S. District Court for the District of Columbia is the proper forum.

> II. **Because GGG's pending Motion to Reconsider Transfer of Case may be resolved in GGG's favor and this case transferred out of this Court, this Court should stay the case pending the Eastern District of Virginia's resolution of the Motion to Reconsider.**

GGG's Motion to Reconsider the transfer of this action to this Court is still pending in the Eastern District of Virginia. As such, the Court should stay this case and decline to proceed with any action on Plaintiffs' instant Rule 57 Motion for a Speedy Hearing until the dispute over venue in the transferring court is finally resolved. As reflected above, GGG has asserted meritorious arguments in favor of the application of the forum selection mutually agreed upon by the parties in the Escrow Agreement. These arguments were asserted and explained in greater detail in GGG's motion for reconsideration. Should the transferring court in the Eastern District of Virginia agree with GGG's arguments and alter its judgment, the case may be transferred out of this court. It would therefore be prudent and in the interests of justice for this Court to await the Eastern District of Virginia's ultimate disposition of the forum dispute prior to moving forward with the matter and Plaintiffs' Motion for a Speedy Hearing.

## CONCLUSION

Because the Eastern District of Virginia has not yet ruled on GGG's motion for reconsideration of the transfer of this case to this Court, further action in this matter would be premature. In the interests of justice and judicial economy, GGG asks the Court to stay any further proceedings in this matter, including any action on Plaintiffs' Rule 57 Motion for a Speedy Hearing, pending disposition of GGG's motion for reconsideration.

**GOODMAN-GABLE-GOULD/
ADJUSTERS INTERNATIONAL,**

**By Counsel.**

*/s/ Morgan E. Villers*
Morgan E. Villers, Esq. (WVSB #13481)
Flaherty Sensabaugh Bonasso PLLC
200 Capitol Street
Post Office Box 3843
Charleston, WV 25338-3843
Tel: (304) 345-0200
Fax: (304) 345-0260
mvillers@flahertylegal.com

Peter T. DeMasters, Esq. (WVSB #7153)
Flaherty Sensabaugh Bonasso PLLC
48 Donley Street, Suite 501
Morgantown, WV 26501
Tel: (304) 598-0788
Fax: (304) 598-0790
pdemasters@flahertylegal.com