**EXECUTION COPY**

## ESCROW AGREEMENT

This ESCROW AGREEMENT (hereinafter called the "Agreement"), made this 23rd day of April, 2018, by and among GREENBRIER HOTEL CORPORATION (hereinafter called "GREENBRIER"), THE GOODMAN-GABLE-GOULD COMPANY (hereinafter called "GGG"), and EAGLEBANK, a Maryland State Chartered Bank with offices located in the District of Columbia (hereinafter called the "Escrow Agent").

### WITNESSETH:

WHEREAS, GREENBRIER and GGG (hereinafter collectively called the "Nonbank Parties") desire to establish an escrow account with the Escrow Agent for the purpose of holding insurance proceeds to which both Nonbank Parties assert claim; and

WHEREAS, the Escrow Agent has agreed to establish such an escrow account for the benefit of the Nonbank Parties and to act as the custodian of the Escrow Fund (as hereinafter defined), subject to the following terms and conditions.

WHEREAS, GREENBRIER and GGG have entered into a certain Agreement with an effective date of March 27, 2018 pursuant to which the Nonbank Parties agree to place insurance proceeds in escrow, and whereas GREENBRIER and GGG entered into a certain retainer agreement with which there are disagreements, including but not limited to whether such retainer agreement has been breached, if it has been canceled, and whether THE GOODMAN GABLE GOULD COMPANY is entitled to recover thereon.

NOW, THEREFORE, in consideration for the mutual promises and covenants set forth below, it is agreed as follows:

1. **ESCROW ACCOUNT:** On or before April 25, 2018, the Nonbank Parties, on their own account or through Resort Hotels Association ('RHA") will deposit with Escrow Agent certain funds to be held in an interest-bearing escrow account (the "Escrow Account"), which Escrow Account shall open and be maintained at Eagle Bank, in Washington, DC, in the name "Eagle Bank, Escrow Agent, in reference to GREENBRIER-GGG Funds deposited into the Escrow Account shall bear interest at the 9-month risk free Certificate of Deposit rate in effect at the bank on the day the Escrow Account is opened. All interest earned on the funds in the Escrow Account shall be reported against Greenbrier Hotel Corporation's taxpayer identification number, 55-0332133. Amounts from time to time on deposit in the Escrow Account, including interest from time to time earned thereon, shall be referred to herein as the "Escrow Fund." The Parties agree that the funds in question will be held in a Certificate of Deposit that allows for a one-time withdrawal of the funds held without penalty ("CD").

2. **DISTRIBUTIONS:** Funds from the Escrow Account shall be disbursed in accordance with written instructions agreed to and signed by both of the parties holding this account and/or in accordance with the provisions in paragraph 10 below, Notwithstanding



EXHIBIT
C



**EXECUTION COPY**

anything set forth herein to the contrary, the Escrow Agent shall follow the joint written instructions of the Nonbank Parties as to the disposition of the Escrow Fund."

       3.    <u>ESCROW FEE</u>:  As compensation for its services hereunder, the Escrow Agent shall be paid a fee by the Nonbank Parties, in the amount of $2,500 per year (or any portion thereof), payable in advance at the time of the execution of this Agreement from the funds being deposited, and on the anniversary date of this Agreement for each succeeding year thereafter for so long as this Agreement remains in effect.  All such fees, once paid, shall be non-refundable.  Notwithstanding anything set forth herein to the contrary, the Escrow Agent is hereby authorized to charge its fees against the Escrow Fund if such fees have not been paid in full prior to the final disbursement of the Escrow Fund.  The Nonbank Parties will decide how the fee should be allocated, if at all, between them.

       4.    <u>LIMITATION OF RESPONSIBILITY AND LIABILITY</u>:  The Escrow Agent:

       (i)    Shall have no liability for its actions (or failure to act) hereunder or in connection herewith, except as the same may arise as the result of its own gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction;

       (ii)    shall be authorized to rely upon all written notices, instructions or other communications of either, both or all of the Nonbank Parties, or of any other person or persons it believes to have been authorized to act on behalf of either, both or all of the Nonbank Parties, which appear to be valid on their faces and which it believes to be genuine;

       (iii)    Shall have no implied or inferred obligations or responsibilities hereunder, nor shall it have any obligation or responsibility to collect funds or seek the deposit of money or property;

       (iv)    May consult with legal counsel of its choice, at the expense of the Nonbank Parties, with regard to any legal question(s) arising in connection with its duties or responsibilities hereunder, and shall have no liability or responsibility by reason of any action it may take or fail to take in accordance with the opinion(s) of such counsel;

       (v)    Shall be authorized to rely on its own good faith determinations as to questions of fact; and

       (vi)    Shall be entitled to comply with any final order, judgment or decree of a court of competent jurisdiction, and/or with consistent written instructions from both or all of the Nonbank Parties.

       In no event shall the Escrow Agent be liable for any consequential, punitive or special damages, or for an amount in excess of the value of the Escrow Fund determined on the date(s) of deposit, less all withdrawals.  The Escrow Agent shall not incur any liability for not performing any act or fulfilling any duty, obligation or responsibility hereunder, by reason of any occurrence beyond its reasonable control (including but not limited to any provision of any

-2-



**EXECUTION COPY**

present or future law or regulation, or order of governmental authority, or due to acts of God, war, terrorist attack , insurrection or domestic violence, or unavailability of the Federal Reserve Bank wire or telex or other wire or communication facility).

5.    COSTS AND EXPENSES; INDEMNIFICATION:  Each of the Nonbank Parties hereby jointly and severally agrees to pay all expenses, including legal fees and costs of suit, which the Escrow Agent may incur as a consequence of its having agreed to serve as escrow agent pursuant hereto, except as the same may arise as the result of its own gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction. The Escrow Agent is authorized to charge all such expenses against the Escrow Fund, if not promptly paid or reimbursed by the Nonbank Parties. As security for the obligations of the Nonbank Parties, each of the Nonbank Parties hereby jointly and severally grants the Escrow Agent a lien upon and security interest in the Escrow Fund. Additionally, each of the Nonbank Parties hereby jointly and severally indemnifies, and agrees to defend and save the Escrow Agent, and its current and future officers, directors, employees and agents harmless from and against, any and all claims, demands, losses, damages, liabilities and costs, including without limitation, all out-of-pocket expenses, legal fees and costs of suit, now or hereafter incurred, arising out of, in connection with, or resulting from the Escrow Agent's actions (or failure to act) under this Agreement, except as the same may arise as a result of the Escrow Agent's own gross negligence or willful misconduct, as finally determined by a court of competent jurisdiction.

6.    Notices.  Any notice, request, instruction, document or other communication to be given hereunder by any party hereto to any other party hereto shall be in writing and validly given if:  (i) delivered personally; (ii) sent by telecopy (followed by a copy by mail or overnight express); (iii) delivered by overnight express; or (iv) sent by registered or certified mail, return receipt requested, postage prepaid, as follows:

    To    GREENBRIER HOTEL CORPORATION
          c/o Hunton Andrews Kurth, LLP
          2200 Pennsylvania Avenue, NW, Suite 900
          Washington, DC  20037
          Attn. Michael S. Levine and/or Lorelie S. Masters
          Facsimile No. 202-861-3674
          Email:  mlevine@huntonak.com, lmasters@huntonak.com

    To    THE GOODMAN-GABLE-GOULD, COMPANY
          10110 Molecular Drive, Suite 300
          Rockville, Maryland  20850

          Attn. Harvey Goodman and/or Neil Kahn
          Email: hgoodman@gggco.com, nkahn@gggco.com
          Facsimile No.: 301-231-0672

                        -and-



**EXECUTION COPY**

David B. Karel
WILKOFSKY, FRIEDMAN,
KAREL & CUMMINS
299 Broadway, 17th Floor
New York, New York 10007
(212) 285-0510
Email: dbkarel@wfkclaw.com

To    Escrow Agent, at
EAGLEBANK
11960 Tech Road, Lower Level
Silver Spring, MD 20904
Attention: Eartha C. Morris
Facsimile No. (301) 622-7625
Email: emorris@eaglebankcorp.com

or at such other address for a party as shall be specified by like notice. Any notice which is delivered personally, by telecopy, or sent by overnight express in the manner provided herein shall be deemed to have been duly given to the party to whom it is directed upon actual receipt by such party. Any notice which is addressed and mailed in the manner herein provided shall be conclusively presumed to have been given to the party to whom it is addressed at the close of business, local time of the recipient, on the third business day after the day it is so placed in the mail.

      7.    <u>RIGHT OF ESCROW AGENT TO REFUSE TO ACT</u>: In the event of any ambiguity or uncertainty hereunder or in any notice, instruction or other communication received by the Escrow Agent hereunder, the Escrow Agent may, in its sole discretion, refrain from taking any action other than retaining possession of the Escrow Fund, unless the Escrow Agent receives written instructions, signed by all of the Nonbank Parties, which eliminates such ambiguity or uncertainty.

      8.    <u>DISPUTES AMONG NONBANK PARTIES</u>: In the event of any dispute between or conflicting claims by or among the Nonbank Parties and/or any other person or entity with respect to all or any part of the Escrow Fund, the Escrow Agent shall be entitled, in its sole discretion, to refuse to comply with any and all claims, demands or instructions with respect to the Escrow Fund so long as such dispute or conflict shall continue, and the Escrow Agent shall not be or become liable in any way to the Nonbank Parties for failure or refusal to comply with such conflicting claims, demands or instructions. The Escrow Agent shall be entitled to refuse to act until, in its sole discretion, either (i) such conflicting or adverse claims or demands shall have been determined by a final order, judgment or decree of a court of competent jurisdiction, which order, judgment or decree is not subject to appeal, or settled by agreement between the Nonbank Parties, as evidenced in a writing satisfactory to the Escrow Agent, or (ii) the Escrow Agent shall have received security or an indemnity satisfactory to it sufficient to hold it harmless from and against any and all losses which it may incur by reason of so acting. The Escrow Agent may, in addition, elect, in its sole discretion, to commence an interpleader action or seek other judicial relief or orders as it may deem, in its sole discretion, necessary. The costs and expenses

-4-



**EXECUTION COPY**

(including reasonable attorneys' fees and expenses) incurred in connection with such proceeding shall be paid by, and shall be deemed a joint and several obligation of, the Nonbank Parties.

9. <u>RESIGNATION BY ESCROW AGENT</u>: Upon thirty (30) calendar days' prior written notice to each of the Nonbank Parties delivered or sent as required above, the Escrow Agent shall have the right to resign as escrow agent hereunder and to thereby terminate its duties and responsibilities hereunder, and shall thereupon be released from these instructions. Upon resignation by the Escrow Agent, the Escrow Agent shall provide the Nonbank Parties with sufficient information concerning the status of the Escrow Fund to enable them to inform a successor escrow agent as to the status thereof.

10. <u>TERMINATION OF ESCROW AGREEMENT</u>: Escrow Agent Eagle Bank will disburse funds from this Account in accordance with written instructions that the Nonbank Parties send to the Escrow Agent and consistent with the one-time termination provision of the CD. In a case where the term of the CD terminates, the Nonbank Parties will instruct Escrow Agent Eagle Bank on how the funds should be disbursed, whether into another CD or to the Nonbank Parties in accordance with written instructions agreed to by both Nonbank Parties. If the Escrow Agent does not receive written instructions from the Nonbank Parties about how to disburse the funds prior to the expiration of the term of the CD, then the Parties agree that the funds will be rolled over into a new CD which has the same terms as the expiring CD.

11. <u>ENTIRE AGREEMENT</u>: This Agreement contains the entire understanding by and among the parties hereto; there are no promises, agreements, understandings, representations or warranties, other than as herein set forth, including specifically the "March 27, 2018" agreement and the contested retainer agreement; Eagle Bank is not a party to the latter two agreements. No change or modification of this Agreement shall be valid or effective unless the same is in writing and is signed by all of the parties hereto.

12. <u>APPLICABLE LAW, SUBMISSION TO JURISDICTION;</u> <u>SUCCESSORS AND ASSIGNS</u>: This Agreement shall be governed in all respects by the internal substantive laws of the District of Columbia (and not its choice of law rules), and shall be binding upon and shall inure to the benefit of the parties hereto, and their respective heirs, executors, administrators, personal representatives, successors and assigns. Each of the Nonbank Parties hereby submits to the personal jurisdiction of the courts of the District of Columbia, whether federal or local, and agrees that all proceedings relating hereto shall be brought in courts located within the District of Columbia.

13. <u>WAIVER OF JURY TRIAL</u>: Each of the parties hereto waives its right to a jury trial with reference to any and all proceedings, legal or equitable, that may be brought with reference to the rights, duties or obligations of any of the parties hereto.

14. <u>INCORPORATION OF RECITALS</u>: The recitals set forth at the beginning of this Agreement are incorporated herein and made a part hereof by this reference.



EXECUTION COPY

IN WITNESS WHEREOF, the parties hereto have caused their respective hands and seals to be set hereto with the intention of being bound effective in all respects as of the date and year first hereinabove written.

[Corporate Seal]
ATTEST:

By: _____

Name: _____
Title: _____

GREENBRIER HOTEL CORPORATION
A West Virginia Corporation

By: _____

Name: _Elmer F. Coppoolse_
Title: _COO_

[Corporate Seal]
ATTEST:

By: _____Poole_

Name: _MARIAH M. POOLE_
Title: _VP of IT_

THE GOODMAN-GABLE-GOULD COMPANY

By: _____

Name: _HARVEY M. GOODMAN_
Title: _PRESIDENT + CEO_

ESCROW AGENT:

EAGLE BANK

[Corporate Seal]
ATTEST:

By: _____

Name: _____
Title: _____

By: _____

Name: _____
Title: _____

-6-