# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA

## AT BECKLEY

GREENBRIER HOTEL CORPORATION and
THE GREENBRIER SPORTING CLUB, INC. and
GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC. and
OLD WHITE CHARITIES, INC. and
OAKHURST CLUB LLC,

                Plaintiffs,

v.                                              CIVIL ACTION NO.   5:19-cv-00772
                                                               LEAD ACTION

GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL,

                Defendant.

and,

GREENBRIER HOTEL CORPORATION and
THE GREENBRIER SPORTING CLUB, INC. and
GREENBRIER SPORTING CLUB DEVELOPMENT COMPANY, INC. and
OLD WHITE CHARITIES, INC. and
OAKHURST CLUB LLC,

                Plaintiffs,

v.                                                CIVIL ACTION NO.   5:19-cv-00795
                                                               CONSOLIDATED ACTION

GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL,

                Defendant.

and

GOODMAN-GABLE-GOULD/ADJUSTERS INTERNATIONAL,

                Plaintiff,

v.                                                CIVIL ACTION NO. 5:20-cv-00520

CONSOLIDATED ACTION

GREENBRIER HOTEL CORPORATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs Greenbrier Hotel Corporation (" Greenbrier Hotel"), The Greenbrier Sporting Club, Inc. ("Greenbrier Club"), Greenbrier Sporting Club Development Company, Inc. ("Greenbrier Development"), Old White Charities, Inc. ("Old White"), and Oakhurst Club LLC's ("Oakhurst") (collectively, "Plaintiffs") Renewed Motion for Partial Summary Judgment. (ECF No. 145.) For the reasons more fully explained below, the motion is **DENIED**.

## I. BACKGROUND

### A. *Factual Background*

This action arises out of the occurrence of a "thousand-year flood" that occurred in the Greenbrier River Valley and White Sulphur Springs, West Virginia, on June 23, 2016. (ECF No. 1 at ¶ 17.) During this flood, approximately 11 inches of rain fell in a 12-hour period. (*Id.*) The flood caused significant damage to the Plaintiffs' properties, including flooding the casino, chapel, and tennis stadium, as well as causing roof and structural damage in various other buildings. (ECF No. 145 at 5.) The flood also caused economic damage, in the form of lost guest revenues, loss of golf course revenue, and "extensive monetary loss" from the cancellation of the 2016 Greenbrier Classic golf tournament. (*Id.* at 6.)

At the time of the flood, Plaintiffs held several policies of property insurance for the damaged properties which were obtained through the Resort Hospitality Association ("RHA") and

Resort Hotel Services. (ECF No. 148 at 3.) Shortly after the flood, on July 7, 2016, Plaintiffs engaged Defendant Goodman-Gable-Gould/Adjusters International ("GGG") to assist in the measurement of the loss resulting from the flood damage, as well as the formulation and adjustment of Plaintiffs' claims with the insurance companies. (ECF No. 144–1.) The terms of this engagement were set forth in a Services Agreement that was signed by both parties. (*Id.*) The Services Agreement authorized GGG to "prepare all necessary estimates, inventories and other applicable and/or required instruments to comply with the provisions of the subject insurance policies." (*Id.*)

Pursuant to the terms of the Services Agreement, GGG was to be compensated on a contingency fee basis according to a fee schedule based upon the amount recovered by the plaintiffs as a result of their claims. (*Id.*) To summarize, recoveries up to $10 million would result in a 2% fee to GGG. For a recovery between $10 million and $20 million, the fee would be 2% of the $10 million plus 4% of the amount between $10 and $20 million, and so on, up to 8% for recoveries above $50 million. (*Id.*) Through the Services Agreement, Plaintiffs assigned to GGG "all monies due or to become due from said insurance companies to the extent of the fee above mentioned." (*Id.* at 4.)

Regarding termination of the relationship, the Services Agreement provides the following:

> The term of this Services Agreement commences on the date of execution hereof and, unless terminated earlier pursuant to the terms of this Agreement, shall continue in full force until the finalization and completion of the adjustment of all claims of the Insured against the insurance companies involved.

(*Id.* at 3.) The Services Agreement, however, does not include any additional provisions that would govern how or under what conditions the agreement could be terminated. (*See id.*) On March 9, 2018, GGG received notice from Plaintiffs that they had revoked GGG's authority to

3

perform services pursuant to the Services Agreement.[1] (ECF No. 148 at 3–4.) By this time, GGG asserts that approximately $39 million had been recovered by Plaintiffs as a result of the services GGG provided. (*Id.* at 3.)

The insurance companies had accepted and adjusted the claims with GGG, which resulted in monies being paid pursuant to the insurance policies. (*Id.* at 4.) These payments were issued to RHA, where such funds were held by RHA as a stakeholder. (*Id.*) Both Plaintiffs and GGG made claims to the funds, and, due to the competing claims, RHA withheld payment to either party. (*Id.*) In essence, GGG claimed it was entitled to the funds for its performance under the Services Agreement, while Plaintiffs claimed that GGG had breached the Services Agreement and was not entitled to any of the funds. (*Id.*)

To resolve the dispute, as well as to address any future disputes on funds paid by the insurers, Plaintiffs and GGG entered into two agreements. (*Id.*) Pursuant to the March 27, 2018, Escrow Agreement, RHA was to place the funds it held to which GGG claimed entitlement into escrow, approximately $609,000. (ECF No. 36–2.) This escrow was anticipated to resolve the dispute as to the funds, which in turn would require resolution of the issue of whether GGG had breached the Services Agreement. The parties agreed that the disputed funds would be placed into an interest-bearing account, under both parties' names. (ECF No. 148 at 4.) After selecting a bank to act as the escrow agent, the parties entered into the second agreement on April 23, 2018. (*Id.*) The second agreement "clarified and amplified" the first as to how the competing claims to the disputed funds would be resolved. (*See* ECF No. 36–3.)

---

[1] Plaintiffs allege that they terminated the services of GGG "in or around November or December 2017." (ECF No. 1 at ¶ 45.) However, GGG received no notification of its termination until March 9, 2018.

4

At some point either before or after terminating the Services Agreement with GGG, Plaintiffs retained another adjustment company, BDO,[2] to take over GGG's role and complete the claims submission process. (ECF No. 148 at 5.) Plaintiffs have asserted that BDO had to "completely start over, creating new and more accurate claim documents, estimates, and demands." (ECF No. 1 at ¶ 48.)

On or about March 5, 2020, and during the course of this litigation, Plaintiffs notified GGG that they had reached an agreement with the insurers for an additional approximately $28.5 million to be paid out in final settlement of their claims. (ECF No. 148–1.) Based on the fee schedule in the Services Agreement, GGG has asserted its entitlement to approximately $2.2 million of this payment, which funds were placed in an escrow account, subject to the same conditions as the previously escrowed funds, pending the resolution of this litigation. (ECF No. 148–2.) Plaintiffs dispute that GGG is entitled to these funds, as they were secured following the termination of Services Agreement.

B. *Procedural History*

Plaintiffs first filed this action in the United States District Court for the Eastern District of Virginia, Richmond Division. (ECF No. 1.) The matter was subsequently transferred to this Court on October 23, 2019. (ECF No. 21.) GGG sought to dismiss the complaint while it was pending in the Eastern District of Virginia, but the motion was denied, as was GGG's Motion to Reconsider the Transfer of Case. (*See* ECF No.52.) GGG filed its answer to Plaintiffs' complaint on January 10, 2020. (ECF No. 55.)

---

[2] "BDO" is identified only as the "successor private adjuster." (*See* ECF No. 145 at 3.)

5

Shortly after this action was transferred, Plaintiffs filed a motion for partial summary judgment. (ECF No. 56.) Plaintiffs sought judgment in their favor on Count I of their complaint, which sought a declaratory judgment that GGG is not entitled to any additional payments related to the services performed, including any portion of the disputed funds held in escrow. (*See* ECF No. 56 at 18–20.) The basis for that argument was that the Services Agreement was terminable at will, thereby rendering summary judgment appropriate. (ECF No. 145 at 2.) GGG argued that the motion was premature, as discovery had only just begun at that time, and filed a Rule 56(d) Affidavit which identified numerous subjects upon which GGG averred it needed to conduct discovery. (ECF Nos. 64, 64–1.) Ultimately, this Court denied Plaintiffs' motion without prejudice, finding that the motion was premature. (ECF No. 79.)

The Plaintiffs renewed their motion for partial summary judgment on September 16, 2021. (ECF No. 144.) GGG responded in opposition on October 15, 2021, following a stipulation between the parties for an extension of time. (ECF No. 148.) Thereafter, Plaintiffs responded on October 22. (ECF No. 149.) With the briefing on the Renewed Motion complete, it is now ripe for adjudication.

## II. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pr. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322–23. "Facts are

'material' when they might affect the outcome of the case, and a 'genuine issue' exists where the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When construing such factual issues, the Court may neither weigh the evidence, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), nor make determinations of credibility. *Sosebee v. Murphy*, 797 F.2d 179, 182 (4th Cir. 1986). Rather, the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "The nonmoving party must satisfy this burden of proof by offering more than a mere 'scintilla of evidence' in support of his or her position." *Piedmont Behavioral Health Ctr., LLC v. Stewart*, 413 F.Supp.2d 746, 751 (S.D. W. Va. 2006) (Goodwin, J.) (citing *Anderson*, 477 U.S. at 252). However, "summary judgment is appropriate only after the opposing party has had 'adequate time for discovery.'" *Lonestar Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 928 (4th Cir. 1995). When a case is decided summarily "before discovery is concluded" and on an incomplete record, "there has been a mistake and inadvertence and one that works an injustice." *White v. Investors Management Corp.*, 888 F.2d 1036, 1041 (4th Cir. 1989).

III.   DISCUSSION

Plaintiffs again seek summary judgment in their favor on Count I of their complaint in this renewed motion. (ECF No. 144 at 17.) Count I seeks a declaratory judgment that GGG is not entitled to any additional payments related to the services performed, including that it has no right to any portion of the disputed funds held in escrow. (*Id.* at 18.) In support of this argument, Plaintiffs assert that, under West Virginia law, the Services Agreement was terminable at will; Plaintiffs "were within their rights in terminating the Services Agreement"; and upon termination, GGG was not entitled to any recovery realized by Plaintiffs or through BDO's efforts. (*Id.* at 17.)

In response, GGG argues first that summary judgment on Count I would be "inappropriate" as it is "inextricably intertwined with and dependent upon" disputed issues not subject to declaratory judgment. (ECF No. 148 at 9.) Furthermore, GGG asserts that even if the claims were not intertwined and able to be decided independently of the others, summary judgment would still be inappropriate as the operation and intent of the contingency fee schedule in the Services Agreement remains a disputed material fact. (*Id.* at 11.) Finally, GGG argues that, like the original motion, Plaintiffs' renewed motion is premature as discovery is still ongoing—and recently extended by a joint motion, (ECF No. 141)—and numerous depositions have been delayed by the COVID-19 pandemic. (ECF No. 148 at 17.)

Rule 56(d) of the Federal Rules of Civil Procedure establishes as follows:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) defer considering the motion or deny it;
>
> (2) allow time to obtain affidavits or declarations or to take discovery; or

(3) issue any other appropriate order.

In the instant motion, GGG failed to file a Rule 56 affidavit. Generally, "the failure to file an affidavit under [Rule 56(d)] is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Evans v. Technologies Applications & Service Co.,* 80 F.3d 954, 961 (4th Cir. 1996) (discussing Rule 56(f), the predecessor for Rule 56(d)).

Yet, the stringent requirements of Rule 56(d) need not be followed to the letter where the non-moving party has adequately shown "that the motion is pre-mature and that more discovery is necessary." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). *See also* John F. Lapham, Note, *Summary Judgment Before the Completion of Discovery: A Proposed Revision of Federal Rule of Civil Procedure 56(f)*, 24 U. MICH. J.L. REF. 253, 269 (1990) ("Courts that allow some deviation from the strict letter of rule 56(f) have the stronger argument. The intent of the drafters to infuse the Federal Rules with a spirit of procedural liberality is evident throughout the rules themselves as well as the advisory committee's notes.") "Specifically, if the nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit,'. . . , and if the nonmoving party was not lax in pursuing discovery, then we may consider whether the district court granted summary judgment prematurely, even though the nonmovant did not record its concerns in the form of a Rule 56(f) affidavit." *Harrods Ltd.*, 302 F.3d at 244–45 (quoting *First Chicago Int'l v. United Exchange Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988)). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Dept. of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000).

Cliché though it may be, we live in unprecedented times. The COVID-19 pandemic has certainly disrupted the lives of many, a fact recognized by the parties in their joint motion, (ECF No. 141), to amend this Court's Fourth Amended Scheduling Order. There, the parties requested more time to "complete discovery and depositions, submit dispositive motions, conduct trial, and work towards a resolution of this matter." (*Id.* at 1.) Despite requesting more time to submit dispositive motions, Plaintiffs submitted the instant renewed motion only two weeks later. (*See* ECF No. 144.) This motion was renewed despite Plaintiffs' own clear concession that more time to conduct discovery was needed.

Despite failing to file a Rule 56(d) affidavit, GGG has adequately shown that more discovery is needed in order to properly oppose Plaintiffs' motion. In particular, GGG has shown—and Plaintiffs confirmed—that its failure to conduct adequate discovery is through no fault of its own, but instead is due to "additional 'waves' or 'spikes' of the COVID-19 coronavirus pandemic and its new variants[.]" (ECF No. 141 at 1.) Moreover, GGG has highlighted the information that it has not yet had the opportunity to discover, namely the operation of the contingency fee schedule, and that it plans to elicit this information through the expert opinions and depositions. (ECF No. 148 at 11–12.) Therefore, between the joint motion to amend and its own representations, GGG has adequately shown the necessity for more discovery, even if it did not file the favored Rule 56(d) affidavit. Plaintiffs' renewed motion is simply premature.

Accordingly, Plaintiffs' Renewed Motion for Partial Summary Judgment, (ECF No. 145), is **DENIED**.

## IV. CONCLUSION

For the reasons more fully explained above, Plaintiffs' Renewed Motion for Partial Summary Judgment, (ECF No. 145), is **DENIED** without prejudice.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: January 4, 2022

THOMAS E. JOHNSTON, CHIEF JUDGE